UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| INDUSTRIAL PACKAGING CORP. | CIVIL ACTION NO. 22-5972 |
| VERSUS | JUDGE DONALD E. WALTER |
| UNION INSURANCE CO. OF PROVIDENCE | MAGISTRATE JUDGE MCCLUSKY |

## MEMORANDUM RULING

Before the Court is a motion for summary judgment filed by Defendant Union Insurance Company of Providence ("Union Insurance"). See Record Document 35. Plaintiff Industrial Packaging Corporation ("Industrial Packaging") filed an opposition, and Union Insurance filed a reply. See Record Documents 37 and 40. For the reasons stated below, Union Insurance's motion for summary judgment (Record Document 35) is **GRANTED** in part and **DENIED** in part.

## BACKGROUND

This insurance dispute arose after frigid weather allegedly caused significant damage to Industrial Packaging's property. Union Insurance issued policy number 5A5-03-31 (the "Policy") to Industrial Packaging for the period July 1, 2020 to July 1, 2021. See Record Document 35-3 at 1. The Policy provided commercial property insurance and covered a building located at 274 Wilder Drive, Homer, LA 71040 (the "Covered Property"). See id. at 6. Under the Policy, Union Insurance agreed to pay for "direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." Id. at 11. The Policy did not cover damage to the interior of any building or structure caused by or resulting from snow, sleet, or ice, unless the building or structure first sustained damage by a "Covered Cause of Loss" to its roof or walls through which the snow, sleet, or ice

entered, or if the loss or damage resulted from the thawing of snow, sleet, or ice on the building or structure. Id. at 51.

On February 22, 2021, Industrial Packaging reported a loss to Union Insurance. See Record Document 35-5 at 1. Industrial Packaging contends that the loss involved wet and damaged insulation and other related building components caused by melting snow and ice. See id. The next day, Union Insurance assigned the claim to Superior Claims, an independent adjuster. See id. at 2. On March 5, 2021, Superior Claims inspected the property. See id. at 16–17. In its report, Superior Claims noted that the roof had been in place since 1986 and that "[i]t [was] obvious the insured has had issues with the roof leaking in the past" because it noticed "an application of elastomeric coating in place over roof seams." Id. at 16. Additionally, Superior Claims further noted that "[w]e did not readily recognize any openings or damage to the roof caused by the weight of ice and snow from any other peril insured against." Id. However, because Industrial Packaging informed Union Insurance that the roof did not leak prior to the storm, Superior Claims recommended hiring an engineer. Id. at 17.

On May 27, 2021, due to the disagreement regarding the scope, the amount of the loss, and the amounts due under the Policy, Industrial Packaging invoked appraisal. See Record Document 37-3 at 72. The parties disagreed as to whether appraisal was premature.[1] On July 16, 2021, a joint inspection took place. See Record Document 35-5 at 129. On August 9, 2021, Union Insurance submitted an estimate of $14,886.49 to repair the insulation. See id. at 138. That same day, Industrial Packaging's appraiser submitted an estimate of $1,907,759.55. See id. at

---

[1] On June 25, 2021, Eric Shawler sent an email on behalf of Union Insurance to Kevin Donlson, Industrial Packaging's appraiser, stating, "EMC is not in a position to determine the loss or the extent of the loss, and until that time EMC has been prevented from preparing a scope of damage and an estimate. Of Course, as you are aware the appraisal process is premature until EMC has completed that work and there is a disagreement as to the amount of loss if any." Record Document 37-3 at 77.

144. On August 10, 2021, Union Insurance issued the amount of its estimate, less a $1,000 deductible. See id. at 228. On August 12, 2021, Union Insurance sent $13,886.49 to Industrial Packaging. See Record Document 35-4 at 2.

In accordance with the appraisal process, Industrial Packaging and Union Insurance each selected appraisers, who, in turn, selected an umpire, Bree McCorkle ("McCorkle"). See Record Document 35-5 at 166. However, Industrial Packaging's original appraiser came to suspect a possible improper relationship between Union Insurance's appraiser and McCorkle. See id. at 151. Therefore, Industrial Packaging attempted to but did not secure McCorkle's resignation. See id. Shortly thereafter, Industrial Packaging's second appraiser resigned, and it quickly selected a new appraiser who had a conflict with McCorkle, which resulted in McCorkle's resignation. See id. at 170, 190–191.

After the filing of this suit, the parties ultimately agreed to an impartial umpire, Michael Fried. See Record Document 17 at 1. Industrial Packaging selected a third appraiser who submitted a replacement cost value ("RCV") estimate of $1,155,537.70. See Record Document 35-9 at 4. Union Insurance's appraiser submitted a RCV estimate of $32,573.05 and an actual cash value ("ACV") of $30,236.82. See id. at 67. The appraisal resulted in an award to Industrial Packaging for an ACV award of $714,031.15, with a RCV of $754,039.04. See id. at 102.

Industrial Packaging filed this lawsuit, contending that Union Insurance breached its insurance policy with Industrial Packaging by failing to conduct the claims handling process and/or appraisal process in a timely manner. Industrial Packaging maintains that Union Insurance conducted the investigation and claims handling for Industrial Packaging's claims in bad faith, and therefore, it is entitled to damages. Union Insurance filed this motion for summary judgment, arguing it did not breach the contract and Industrial Packaging is not entitled to additional policy

3

payments in light of the appraisal award. Additionally, Union Insurance contends Industrial Packaging cannot prove Union Insurance acted in bad faith because it paid the umpire award timely.

## LAW AND ANALYSIS

**A. Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. See id. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (quoting Fed. R. Civ. P. 56(c)).

**B. Bad Faith.**

Subject matter jurisdiction in this matter is based on diversity. Thus, Louisiana contract law applies. See Erie R.R. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817 (1938) (holding that a federal court sitting in diversity jurisdiction applies the substantive law of the forum state). "Under Louisiana law, '[a]n insurance policy is a contract between the parties and should be construed

by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code.'" In re Katrina Canal Breaches Litig., 495 F.3d 191, 206 (5th Cir. 2007) (quoting Cadwallader v. Allstate Ins. Co., 848 So. 2d 577, 580 (La. 6/27/03)). "Interpretation of a contract is the determination of the common intent of the parties." La. Civ. Code art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. "Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms." Cadwallader, 848 So. 2d at 580. Ambiguities in the policy must be construed against the insurer and in favor of coverage. See Coleman v. Sch. Bd. of Richland Par., 418 F.3d 511, 517 (5th Cir. 2005). The court resolves an ambiguity by asking "how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." Id.

Louisiana Revised Statute § 22:1892 makes an insurer liable for penalties and attorney fees in certain circumstances based on its bad faith handling of a claim. To prevail under this statute, the insured must show that (1) the insurer received satisfactory proof of loss; (2) the insurer failed to tender payment within 30 days of receiving this proof; and (3) the insurer's failure to pay is "arbitrary, capricious, or without probable cause." Guillory v. Lee, 16 So.3d 1104, 1126 (La. 6/26/09). Similarly, Louisiana Revised Statute § 22:1973(B)(5) provides for an award of penalties when an insurer fails to pay within 60 days and that failure is "arbitrary, capricious, or without probable cause."

Under Louisiana law, "satisfactory proof of loss" means "only that which is sufficient to fully apprise the insurer of the insured's claims." La. Bag Co., Inc. v. Audubon Indem. Co., 999 So.2d 1104, 1119 (La. 12/2/08) (internal quotations omitted). "Louisiana decisions demonstrate

5

that 'proof of loss' is a flexible requirement. An insurer of course must receive some kind of notice of a claim before it can act. So long as it receives enough information, the manner in which it obtains the information is immaterial." Austin v. Parker, 672 F.2d 508, 520 (5th Cir. 1982) (internal quotations omitted). Satisfactory proof of loss can also be established through the insurer's inspection of the site through its own adjuster. See JRA Inc. v. Essex Ins. Co., 72 So.3d 862, 881 (La. Ct. App. 4th Cir. 2011). Whether and when the insurer received "satisfactory proof of loss" sufficient to trigger its payment obligations is a question of fact. Lamar Adv. Co. v. Zurich Am. Ins. Co., 2021 WL 1113451, at *9 (M.D. La. Mar. 22, 2021).

An insurer's actions are found to be arbitrary, capricious, or without probable cause when its refusal to pay is unjustified or "is not based on a good-faith defense." Guillory, 16 So.3d at 1127. The court will look to whether the insurer's actions were reasonable under the totality of the facts. See Merwin v. Spears, 90 So.3d 1041, 1042 (La. 6/22/12). An insurer's duty of good faith includes a duty to conduct "a thorough investigation" and determine whether to settle or litigate based on "the evidence developed in the investigation." Korndorffer v. USAA Cas. Ins. Co., CV 22-2035, 2023 WL 2351725, at *9 (E.D. La. Mar. 3, 2023).

Union Insurance maintains there is no basis for finding bad faith, pointing out that it remitted the full amount of its appraiser's estimate within 30 days of receiving its report. Union Insurance further maintains that there is no basis for finding bad faith because it also delivered the ACV portion of the award, less the $1,000 deductible, within 30 days of the award being rendered. Industrial Packaging argues that Union had satisfactory proof of loss at the latest when it received the report from the Superior Claims adjuster following his inspection on March 11, 2021. Thus, there is a genuine dispute regarding when Union Insurance received the satisfactory proof of loss.

Additionally, as Industrial Packaging points out, Union Insurance's appraiser's estimate was $13,886.49 whereas the appraisal award was $754,039.04 RCV—which is approximately 52 times greater than Union Insurance's valuation of the damages. The significant difference in valuations raise issues of material fact as to whether Union Insurance's original adjustment was conducted in good faith and whether it could have reasonably relied on the numbers its own retained adjusters supplied. See Langley v. Allied Tr. Ins. Co., No. 2:21-CV-03621, 2023 WL 2875148, at *2 (W.D. La. Apr. 10, 2023) (finding a genuine dispute as to the good faith conduct of the insurance company's original adjustment because appraisal award was three times greater than the RCV determined by the insurance adjuster for Coverage A and an increase of over 200 percent for Coverage D); Roofing & Reconstruction Contractors of Am. LLC v. Church Mut. Ins. Co., No. 2:21-CV-03551, 2023 WL 8814596, at *3 (W.D. La. Dec. 20, 2023) (denying motion for summary judgment because "Plaintiffs' evidence creates genuine issues of material fact as to whether [Insurer's] adjuster turned a blind eye to potential evidence of covered losses at the insured property" even though Insurer paid the full ACV after appraisal). Therefore, Union Insurance is not entitled to summary judgment on Industrial Packaging's bad faith claim.

**C. Breach of Contract Claims.**

Industrial Packaging contends Union Insurance breached its insurance policy with Industrial Packaging by failing to conduct the claims handling process and appraisal process in a timely manner. Industrial Packaging further contends that it is entitled to additional policy payments, including damages for mental anguish, loss of business income, recoverable depreciation, the cost of the appraisal process, and temporary repairs. Union Insurance maintains that it did not breach the contract and Industrial Packaging is not entitled to additional policy payments in light of the appraisal award.

1. **Mental Anguish and Loss of Business Income.**

In the complaint, Industrial Packaging seeks additional payments for mental anguish and loss of business income. See Record Document 29 at 5. "[A] corporate entity cannot experience mental anguish." Bayou Fleet P'ship v. Clulee, 150 So. 3d 329, 334 (La. App. 5 Cir. 9/10/14). Additionally, the policy only pays for the loss of business income sustained due to the necessary suspension of operations during a period of restoration. Industrial Packaging fails to submit evidence of suspension of operations or period of restoration. Therefore, Industrial Packaging is not entitled to additional policy payments for mental anguish or loss of business income. Accordingly, summary judgment is granted on these issues.

2. **Recoverable Depreciation.**

Industrial Packaging further contends that it is entitled to recoverable depreciation. See Record Document at 21-22. Union Insurance counters that recoverable depreciation is not due and owing until the insured provides proof of repairs. The Policy provides:

> a. Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.
>
> . . .
>
> d. We will not pay on a replacement cost basis for any loss or damage:
>
> (1) Until the lost or damaged property is actually repaired or replaced; and
>
> (2) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

Record Document 35-3 at 25.

As previously held by this Court, "this provision cannot be used by an insurer to claim at trial that RCV is unrecoverable because the insurer's own delay in payment has made completion of repairs impossible." Roofing, 2023 WL 8814596, at *4. Industrial Packaging may rely on this

principle, to the extent that it can show it is still unable to complete repairs despite receiving the appraisal award. Industrial Packaging incurred $136,429.12 in appraisal costs to pay for appraisers, engineers, umpires, and other costs. See Record Document 37-2 at 3. Industrial Packaging maintains that it has been unable to make repairs even with the tendered appraisal award due to the high costs of the appraisal process. Industrial Packaging further maintains that the cost of the appraisal process was a direct result of Union Insurance's unreasonable tender of $13,886.49. Because this Court has determined that there is a genuine dispute regarding when Union Insurance received the satisfactory proof of loss, this argument is premature. Therefore, summary judgment will be denied as to this issue.

### 3. Cost of Appraisal.

Additionally, Industrial Packaging seeks damages for the costs it incurred during the appraisal process. On May 27, 2021, Industrial Packaging invoked appraisal. See Record Document 37-3 at 72. The Policy provides:

> By endorsement, the policy contains an Appraisal provision that states:
>
> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. Each appraiser will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. Any outcome of the appraisal will not be binding on either party. Each party will:
>
>> a. Pay its chosen appraiser; and
>>
>> b. Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

See Record Document 35-3 at 20. In accordance with the appraisal process, Industrial Packaging and Union Insurance each selected appraisers and eventually agreed to an impartial umpire,

9

Michael Fried. See Record Document 17 at 1. Industrial Packaging incurred $136,429.12 in appraisal costs to pay for appraisers, engineers, umpires, and other costs. See Record Document 37-2 at 3.

Union Insurance argues that appraisal costs are not supported by policy language, and therefore, appraisal fees and costs can only be recovered under the theory of bad faith. The contract clearly states that each party must bear the cost of appraisal. See Record Document 35-3 at 20. However, Industrial Packaging may be entitled to appraisal costs as special damages pursuant to Louisiana Revised Statute § 22:1973. Section 22:1973(A) provides:

> An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

La. R.S. § 22:1973(A). To the extent Industrial Packaging can show Union Insurance's bad faith both predated the appraisal and that such costs are "damages sustained as a result" of Union Insurance's breach of its duty of good faith, it may recover under this category of damages. Id.; see also Roofing, 2023 WL 8814596, at *4 (holding that appraisal fees were unavailable under the policy, but a plaintiff may be entitled to appraisal fees as special damages under Section 22:1973(A) if the plaintiff can prove the insurance company breached its duty of bad faith). Therefore, summary judgment will be denied as these damages.

   4. **Temporary Repairs.**

Lastly, Industrial Packaging asserts that it is entitled to damages for the temporary repairs completed by Trademark Roofing Services. Union Insurance counters that the temporary repairs were already addressed in the appraisal process. In Industrial Packaging's position paper to the umpire, it listed an estimated RCV of $1,55,537.70 including "$8,500 for temporary repairs to

10

the roof, which was completed by Trade Mark[sic] Roofing Solutions to help prevent further damage." Record Document 35-9 at 4. The appraisal resulted in an award to Industrial Packaging for an ACV award of $714,031.15, with a RCV of $754,039.04. See id. at 102. The appraisal included the cost of temporary repairs. Therefore, Industrial Packaging is not entitled to any additional damages for temporary repairs, and Union Insurance is entitled to summary judgment for this issue.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Union Insurance's motion for summary judgment (Record Document 35) is **GRANTED** in part and **DENIED** in part. The motion for summary judgment is **GRANTED** to the extent that Industrial Packaging is not entitled to damages for mental anguish, loss of business income, and temporary repairs. The motion for summary judgment is **DENIED** in all other respects.

An order consistent with the instant Memorandum Ruling shall be issued herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 12th day of September, 2024.

_____
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE

11